IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| William & Marilyn Harris,<br>                             Debtors. | )<br>)<br>) | Case No. 04 B 00279 |
| Attorneys' Title Guaranty Fund, Inc. | )<br>) | |
| -vs- | )<br>) | Adversary No. 04 A 2934 |
| William M. Harris & Marilyn D. Harris | )<br>) | |

**MEMORANDUM OPINION FINDING FOR THE PLAINTIFF ON
COUNTS I, II, III AND IV AND FOR THE DEBTORS ON COUNTS V AND VI**

This matter is before the Court on the six-count adversary complaint brought by the plaintiff, Attorneys' Title Guaranty Fund, Inc. ("ATG"). The first four counts object to the discharge of the debtors, William M. Harris and Marily D. Harris (the "Debtors"), pursuant to § 727. The last two counts are brought pursuant to § 523 to determine the dischargeability of a debt.

This matter was tried before the Court on March 10, 2005. Prior to the hearing on the adversary complaint, this Court denied the Debtors' three motions to dismiss the complaint and set forth the basis for the denial on the record. Additionally, the Debtors sought to invoke their Fifth Amendment privilege against self-incrimination as a basis to not testify in this matter. The Court found that the Debtors had waived their right to assert the privilege and again set forth its reasoning on the record.

The Court will also address three additional motions brought by the Debtors. Two motions for sanctions were filed and noticed for hearing, but were never heard due to the Debtors' failure to comply with Standing Order Number 6. The Debtors failed to

1

re-notice those matters. The next hearing date was the date this matter was set for evidentiary hearing. At the evidentiary hearing, the Debtors neither addressed those motions nor asserted that ATG, Attorney LaZara and Attorney Voiland failed to comply with discovery. Therefore, those motions are denied.

Finally, the Debtors brought a motion captioned "Motion of Answers to Adversary Complaint." That motion seeks to amend the answer to the adversary complaint. That motion will be denied as moot. All matters presented at the evidentiary hearing were considered. Additionally, as noted above, this motion did not comply with Standing Order Number 6 and was not re-noticed for hearing. The Debtors also did not raise this matter prior to or at the evidentiary hearing on the adversary complaint. Therefore, the motion to amend the answer is likewise denied.

## FACTUAL BACKGROUND

The Debtors, William M. Harris and Marilyn D. Harris, filed a voluntary chapter 7 petition on January 6, 2004. The Debtors own their residence located at 980 Wedgewood Lane, Aurora, Illinois. Additionally, they owned numerous parcels of commercial real estate, including property commonly known as 5256 West North Avenue, Chicago, Illinois. The Debtors entered into a contract for the sale of the property on West North Avenue, and the closing occurred on February 26, 2003. At the time of the sale, the property was subject to a mortgage from LaSalle Bank in the amount of approximately $370,583. Pursuant to a pay-off letter obtained by the Debtors' attorney, the proceeds of the sale on the Debtors' commercial property were inadvertently used to pay-off the mortgage on the Debtors' residence. The plaintiff, Attorneys' Title Guaranty Fund, Inc., which had issued a title insurance policy to the

2

purchasers and their lender on the West North Avenue property, was thus obligated to satisfy the unpaid mortgage to LaSalle Bank, N.A. in the amount of $364,131. Therefore, ATG received an assignment of that mortgage and note.

ATG contends that the Debtors were aware of the error and had an obligation to call the error to ATG's attention at that time. As a result of the Debtors' failure to do so, they have been unjustly enriched in the amount of $364,131.01. ATG further asserts that the Debtors sold several parcels of real estate on February 26, 2003: three separate properties on West North Avenue in Chicago, Illinois, and received substantial cash payments at the time of those closings. The three payments received by the Debtors are alleged to have been: one for $39,406.57, another for $52,388.51 and a third for $259,615.64. It is further asserted by ATG that the Debtors have failed to provide records or other documents which would account for the disposition of the monies received by the Debtors within the year immediately preceding the filing of their bankruptcy.

## APPLICABLE STANDARDS FOR OBJECTION TO DISCHARGE

The goal of the Bankruptcy Court is to provide a fresh start to the honest debtor. In exchange, the Bankruptcy Code obligates debtors to accurately and truthfully present themselves before the Court. *In re Garmen*, 643 F.2d, 1252, 1257 (7th Cir. 1980), *cert. denied* 450 U.S. 910 (1981). Objections to discharge brought pursuant to § 727 should be liberally construed in favor of debtors and strictly against objectors so as to effectuate the fresh start policy of the Code. *Soft Sheen Products, Inc. v. Johnson*, 98 B.R. 359, 364 (Bankr. N.D. Ill. 1988). The plaintiff has the burden of proving the

objection and must establish all elements by a preponderance of the evidence. *In re Scott*, 172 F.3d 959, 966-67 (7th Cir. 1999).

### DISCUSSION

### COUNT I

Count I is brought pursuant to § 727(a)(2)(A), which provides: "The Court shall grant the debtor a discharge, unless–the debtor, with intent to hinder, delay or defraud a creditor ... has transferred, removed, destroyed mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–property of the debtor, within one year before the date of the filing of the petition." To prevail under this section, a plaintiff must show proof of actual intent to hinder, delay or defraud a creditor. *In re Snyder*, 152 F.3d 596, 601 (7th Cir. 1998). In determining whether the debtors have acted with intent to defraud, the Court should consider the debtor's "whole pattern of conduct." *In re Ratner*, 132 B.R. 728, 731 (Bankr. N.D. Ill. 1991). Actual fraudulent intent can be inferred from extrinsic evidence. Because a debtor is unlikely to directly acknowledge fraudulent intent, the Court may deduce fraudulent intent from all facts and circumstances of a case. *In re White*, 63 B.R. 742, 744 (Bankr. N.D. Ill. 1986). Intent to defraud involves a material representation that you know to be false or what amounts to the same thing, an omission that you know will create an erroneous impression. *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).

In the present case, the Debtors received substantial amounts of money by reason of the error which took place at their real estate closings. In February of 2003, they received an overpayment of $159,131 in excess of what they would have received

4

had the proper payoff been made. (Tr. at 19). Additionally, because the mortgage on their home was inadvertently paid, they received $204,000, resulting in a total overpayment of $364,131. (Tr. at 19). The question of how this error may have occurred is not relevant to the objection to discharge, but rather the Debtors' conduct following the receipt of the proceeds as well as others that came into their hands within the one year prior to their bankruptcy filing.

Notwithstanding the rather substantial amount of money that came into the Debtors' possession within one year of the filing, their bankruptcy schedules indicate cash on hand of $50 and a checking account with a $200 balance. When questioned concerning the accuracy of these representations at trial, Mr. Harris was evasive and indicated he did not recall whether these were in fact accurate. (Tr. at 31). Again, when questioned about the Statement of Financial Affairs, which indicates one payment to creditors within 90 days of filing, he indicates a payment of $1,300. He states he has no recollection of making that answer in his petition and further that he has no recollection of making other payments to other creditors within that period. (Tr. at 32). Again, when confronted with a closing statement showing that Mr. Harris received a proceeds check in the amount of $52,388.51 (Exhibit No. 4), he acknowledges receiving the check and having cashed the check but states that he cannot recall what he spent it on. (Tr. at 36).

While Mr. Harris provided a rather voluminous assortment of bills pursuant to production requests, they were of limited use in explaining the whereabouts of the funds received by the Debtors. Specifically, Debtors provided a group of bills (Exhibit No. 6), which combined with Mr. Harris' evasive and uncooperative attitude, shed

5

limited light on the funds in question. When asked directly if Exhibit No. 6 and the bills contained therein purported to explain the use of the $52,000, Mr. Harris answered "no." When asked where else the $52,000 was spent he answered: "I cannot tell you, and I've answered it that I don't know where the 52,000 went explicitly." (Tr. at 38.) Mr. Harris later testified that the bills contained in the exhibit account for cash bill payments and that he has also provided money orders and checks totaling $403,000 in receipts. (Tr. at 39.)

It is significant that under § 727(a)(2), it suffices that the actions of the defendant be carried out with "intent to hinder, delay, or defraud a creditor." To hinder, delay, or defraud are stated in the disjunctive, and it would suffice if the actions were intended to hinder and delay. There is no question that the Debtors' transfers of substantial amounts of money from this estate within one year prior to the filing of their bankruptcy has, at the very least, created a substantial hindrance and delay, if not an outright fraud, depriving ATG of its ability to recover under the obligation as well as to discern where the substantial proceeds received by the Debtor were disposed of. The Court is able to discern from the Debtors' demeanor, evasiveness and uncooperative attitude that their goal was to make selective, minimal disclosures in order to frustrate any attempts to establish what they did with the substantial amounts of money received in close proximity to their filing of bankruptcy. Further, it is not credible to testify, as the Debtors have, that they cannot clearly and directly identify any significant transfers that would account for at least a substantial portion of these funds that have been dissipated in rather short order. Accordingly, this Court finds in favor of ATG and against the Debtors with respect to Count I under § 727(a)(2).

## COUNT II

Count II is brought under § 727(a)(3) which provides that the Court shall grant the debtor a discharge unless "the debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

In order to support a denial of this charge under this section, it is not necessary to establish that a debtor acted with intent to conceal his financial condition. *In re Brown*, 56 B.R. 63, 66 (Bankr. D.N.H. 1995). For purposes of this section, the debtors' books and records are considered adequate if it can generally be determined that they are adequate to permit the Court and creditors to trace the debtor's financial dealings. *In re Potter*, 88 B.R. 843, 848 (Bankr. N.D. Ill. 1988). The purpose of this section is to provide the trustee, the Court and creditors with sufficient information to permit an effective evaluation of the debtor's estate, and as a condition precedent to the granting of a discharge in bankruptcy. If such a disclosure is not possible without the keeping of books and records, then the absence of such documents constitute a failure of record keeping to which the Bankruptcy Code applies. *In re Moreau*, 161 B.R. 742, 746 (Bankr. D. Conn. 1993).

From the foregoing authorities, it is clear that the Debtors' obligation imposed by this section must be viewed in light of all surrounding circumstances. From the record before this Court, it would appear that the Debtors have at least some level of business

sophistication. After all, they apparently owned and dealt with commercial real estate which they sold which produced some of the proceeds that are in question here. While it is understandable that the Debtors might not be able to account for every minute expenditure and may have less than perfect recollection of records with respect to minor bills and expenses, as the amounts of money in question become larger and the transactions take place closer to the filing of bankruptcy, the Court should expect greater accountability and precision with respect to transfers and expenditures. In the present case, the Debtors have compiled voluminous receipts and copies of money orders and checks and have largely left it to ATG to attempt to decipher and surmise the nature of those transfers and transactions reflected in the documents. The inference that the purpose of those documents was to obscure rather than to shed light on the transactions in question is reinforced by the Debtors' evasive and uncooperative posture as well as their unwaivering insistence that they have no recollection with respect to any significant aspect of these transactions.

For these reasons, this Court must conclude that the Debtors have failed to meet their obligations under §727(a)(3) with respect to records and documents from which their financial conditions and financial transactions might be ascertained. Accordingly, the Court finds in favor of ATG and against the Debtors with respect to Count II.

### COUNT III

County III is brought pursuant to §727(a)(4). Section 727(a)(4) provides, in relevant part, as follows: "The Court shall grant the debtor a discharge, unless--the debtor knowingly and fraudulently, in or in connection with the case--(A) made a false oath or account." In order to prevail, the creditor must establish five elements under

this section: (1) the debtors made a statement under oath; (2) the statement was false; (3) the debtors knew the statement was false; and (4) the debtors made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case. *In re Bostrom*, 286 B.R. 351, 359 (Bankr. N.D. Ill. 2002). A statement is deemed material for purposes of this section if it related to the debtor's estate, discovery of assets, disposition of property or a debtor's entitlement to discharge. *In re Senese*, 245 B.R. 565, 574 (Bankr. N.D. Ill. 2000).

The testimony and evidence at trial showed that the Debtors had indicated in their bankruptcy schedules cash on hand of $50 and a checking account of $200. They further indicated in their statement of financial affairs, paragraph 3(a), one payment had been made within 90 days of the bankruptcy to a creditor in the amount of $1,300. (Tr. at 31, 32). The testimony indicated that on December 26, 2003, the Debtors wrote a check to himself for $9,000 and was unable to explain what happened to that money. (Tr. at 61). Further, on December 31, 2003, he wrote a check for $8,000 and, again, could not account for the whereabouts of that money or its use. (Tr. at 61). These two transactions occurred within one week prior to the filing of the Debtors' bankruptcy petition. (Tr. at 62). Further, the Debtors closed a Scott Trade account for $30,000 on December 19, 2003. Again, he/they received a check for that amount and is unable to account as to the use or whereabouts of that money. (Tr. at 64). None of these transactions were reflected in the Debtors' sworn schedules and no explanation was given for their absence.

This Court concludes that the Debtors knowingly and fraudulently made a false oath with respect to their bankruptcy petition and schedules and accordingly, a

discharge must be denied pursuant to § 727(a)(4).

## COUNT IV

Count IV is brought under § 727(a)(5). This section provides that the Court shall grant a debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

The Court's findings with respect to the previous counts are sufficient to conclude for purposes of § 727(a)(5) that the Debtors have failed to explain satisfactorily the loss of assets or deficiency of assets to meet their liabilities. They have failed to account for assets and monies received within one year of the filing of the bankruptcy petition and have failed to disclose their interest in bank accounts and other assets as set forth above in Count III. Accordingly, this Court finds that the Debtors' discharge is denied pursuant to §727(a)(5).

## COUNT V

Count V consists of ATG's objection to the discharge of a debt pursuant to § 523(a)(2). Section 523(a)(2)(A) lists 3 separate grounds to except a debt from discharge: actual fraud, false pretenses, and false representation. In order to prevail under false pretenses or false representation, a plaintiff must establish the following elements: (1) the defendant obtained funds through representations that the plaintiff either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentations; (2) the defendant possessed a requisite scienter; and (3) the plaintiff justifiably relied on the misrepresentations to his detriment. *In re*

10

*Jairath*, 259 B.R. 308, 318 (Bankr. N.D. Ill. 2001).

ATG asserts that the Debtors incurred their debt through false representations or actual fraud. These funds were obtained at the closing on the Debtors' commercial property when an erroneous pay-off amount was presented. The testimony of August Butera, the vice-president and general counsel of ATG, does not support such a conclusion. He referred to the overpayment as an "error" and counsel for ATG characterized it as a "confusion with the payoff". (Tr. at 18). Further, it appears that the error was called to ATG's attention upon receipt of a faxed letter from the Debtors' real estate attorney, Joseph LaSalla. It further appears that at that time, the Debtors' real estate attorney, Mr. LaSalla, as well as the Debtors themselves, had discussed working together on a refinance so that this debt could be partially or fully paid. (Tr. at 20).

Accordingly, this Court concludes there is nothing in the testimony or evidence that would support a finding that at the time of the real estate transaction, the Debtors intended to deceive ATG through misrepresentations or otherwise. This Court finds in favor of the Debtors with respect to this count.

## COUNT VI

Count VI is brought under §523(a)(6) which provides that debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" are excepted from discharge.

Section 523(a)(6) requires more than intentional acts which result in injury. *Kawaauhaw v. Geiger*, 118 S. Ct. 974, 977 (1998). Under Kawaauhaw, the plaintiffs must prove that the debtors intended to harm them or their property and not merely that

they acted intentionally and there was a resulting harm. Injuries which result from either negligence or reckless acts do not come within the scope of § 523(a)(6). *Id.*

For the reasons stated in the factual findings of Count V, this Court concludes that the overpayment to the Debtors at the time of the real estate transaction was the result of an error and not an intentional act, much less an act intended to result in the injury to ATG's property. Accordingly, this Court concludes that it finds in favor of the Debtors on Count VI.

## CONCLUSION

After conducting an evidentiary hearing on this matter, this Court finds that ATG satisfied the burden of proof to establish that the Debtors should be denied a discharge pursuant to §§ 727(a)(2), (a)(3), (a)(4) and (a)(5). The Court also finds, however, that although the Debtors are denied a discharge, the debt owed ATG would not be excepted from discharge had one been granted.

Dated: May 18, 2005

Manuel Barbosa
U.S. Bankruptcy Judge